# In the United States Court of Federal Claims

No. 24-1920T

(Filed: January 21, 2026)

|  |  |
|---|---|
| **MICHAEL GOLDMAN,** | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

## ORDER TO SHOW CAUSE

On November 20, 2024, Plaintiff, Mr. Michael Goldman, proceeding *pro se*, filed suit for a tax refund in this Court, seeking recovery of an income tax overpayment for the 2017 tax year. ECF No. 1 ("Compl.") at 5. On February 20, 2025, Defendant, the United States, filed a motion to dismiss for, *inter alia*, failure to state a claim pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). ECF No. 13. On March 21, 2025, Mr. Goldman filed his response, ECF No. 16 ("Pl. Resp."); the government filed its reply on April 3, 2025, ECF No. 17. For the reasons explained below, Mr. Goldman is **ORDERD** to **SHOW CAUSE** why this Court should not dismiss this case for failure to state a claim.

On October 24, 2023 — prior to initiating the present suit — Mr. Goldman filed an administrative refund claim with the Internal Revenue Service ("IRS") for recovery of his 2017 income tax overpayment.[1] ECF No. 1-3 ("Pl. Ex.") at 40. The IRS denied his refund claim. *Id.* Mr. Goldman appealed to the IRS Independent Office of Appels ("IRS Appeals"), which ultimately upheld the denial of his claim. *Id.* at 46-47, 61. The central issue with Mr. Goldman's refund claim — according to the IRS — was that it was late

---

[1] Because Mr. Goldman's 2017 personal income tax return included a claim for a refund, Compl. at 3, Mr. Goldman's filing of his 2017 personal income tax return on October 24, 2023, *simultaneously* constituted the filing of a (timely) administrative refund claim. *See Wertz v. United States*, 51 Fed. Cl. 443, 446 (2002) (citation omitted)).

pursuant to § 6511(b)(2)(A) of the Internal Revenue Code (I.R.C.).[2]  *Id.* at 40, 61.  I.R.C. § 6511(b)(2)(A) limits the amount of refund for a timely-filed administrative claim to the portion of the overpayment, if any, made within the three years "immediately preceding the filing of the claim[.]"  I.R.C. § 6511(b)(2)(A).[3]

Here, Mr. Goldman's 2017 income tax was "deemed paid" on April 15, 2018, *see* I.R.C. § 6513(b)(2) — more than five years before he filed his refund claim.  Thus, absent a specific exception to, or tolling of, I.R.C. § 6511(b)(2)'s look-back period, I.R.C. § 6511(b)(2)(A) limits Mr. Goldman's recovery "to zero dollars," and, therefore, his suit "fail[s] to state a claim upon which relief can be granted."  *Murdock v. United States*, 103 Fed. Cl. 389, 396 (2012).

To avoid the consequences of the look-back provision, I.R.C. § 6511(b)(2), Mr. Goldman invokes the "financial disability" exception of I.R.C. § 6511(h) before this Court — just as he previously did before IRS Appeals.[4]  Compl. at 5; Pl. Ex. at 46-47.  That section provides for the suspension of all limitation "periods" in § 6511(a) and § 6511(b) "while a taxpayer is unable to manage financial affairs due to disability."  I.R.C. § 6511(h).  Specifically, Mr. Goldman contends that he was "legitimately financially disabled during the period from November 2017 through February 2022."  Compl. at 5.  Thus, Mr. Goldman argues that when accounting for tolling beginning from when his taxes were deemed paid (*i.e.*, in April 2018) until March 2022, his refund claim seeks a sum well

---

[2] The I.R.C. is contained in Title 26 of the United States Code.

[3] The Supreme Court treats I.R.C. § 6511(b)(2) as a "look-back" provision, explaining that "it is not a [jurisdictional] 'statutory time . . . limitation[ ]' but rather a 'substantive limitation[ ] on the amount of recovery.'"  *Boeri v. United States*, 724 F.3d 1367, 1369 (Fed. Cir. 2013) (second and third alternations in original) (quoting *United States v. Brockamp*, 519 U.S. 347, 348, 352 (1997)).  Thus, a refund claim seeking sums paid that are outside the look-back period must be dismissed for failure to state a claim.  *See Schallmo v. United States*, 825 F. App'x 826, 828-29 (Fed. Cir. 2020) (affirming trial court's decision granting the government's motion to dismiss for *failure to state a claim* where plaintiff's taxes were paid more than three years prior to the filing of his otherwise timely refund request — thus running afoul of I.R.C. § 6511(b)(2)).

[4] This Court points out that while IRS Appeals denied Mr. Goldman's financial disability claim, it provided little explanation for that decision.  Pl. Ex. at 61 ("We considered your protest[,] and the evidence and arguments submitted in support of the [] claim for a refund of tax and/or penalty. The information you submitted provided no basis to allow any part of your claim.").  Mr. Goldman did not, however, raise a financial disability claim with his *initial* IRS claim.  *See id.* at 55.

*within* the three-year look-back, I.R.C. § 6511(b)(2).  *Id.*  Relying on I.R.C. § 6511(h), Mr. Goldman argues that the IRS improperly denied his 2017 refund claim.  *Id.*

Setting aside, for the moment, the government's proffered arguments for why Mr. Goldman's claim should be dismissed, a critical piece of information is missing both from Mr. Goldman's submission to IRS Appeals — and now again to this Court — pertaining to his financial disability claim.  In each instance, Mr. Goldman acknowledged that he retained an accountant to file his 2017 personal income tax return, provided the accountant with full authorization to file the return, but admits that the accountant ultimately failed to file it.  Pl. Ex. at 55; Compl. at 3.  The potentially fatal problem for Mr. Goldman, however — and what is missing from each of his submissions — is the *precise duration* of the accountant's authorization.

While Mr. Goldman alleges that his accountant had worked for Mr. Goldman during previous tax years, and that at some point the two "parted ways" due to Mr. Goldman's financial issues, the complaint does not specify the exact date their professional relationship terminated.  *See* Compl. at 3.  Moreover, Mr. Goldman's submission to IRS Appeals does not mention either that Mr. Goldman and his accountant eventually parted ways, or that Mr. Goldman had a working relationship with his accountant in previous years.  *See* Pl. Ex. at 55.  As explained *infra*, these omissions as to the precise duration of the accountant's authorization, creates ***two*** distinct problems with Mr. Goldman's financial disability claim before this Court.

*First*, while I.R.C. § 6511(h)(2)(A) sets forth general conditions for a taxpayer to be considered financially disabled, § 6511(h)(2)(B) provides that "[a]n individual shall not be *treated* as financially disabled during *any period* that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters."  I.R.C. § 6511(h)(2)(A)-(B) (emphasis added).  Simply put, the plain text of the financial disability provision contemplates that even though a taxpayer may be financially disabled in general, the taxpayer will "not be *treated*" as such, *so long as* there is another "person [] authorized to act on behalf of [that taxpayer] in financial matters."  I.R.C. § 6511(h)(2)(B) (emphasis added).  Thus, for any ***part*** of an otherwise bona fide period of financial disability during which a taxpayer has authorized another person to transact on the taxpayer's behalf, the taxpayer cannot take advantage of the tolling in I.R.C. § 6511(h).

Accordingly, Mr. Goldman may invoke tolling of the three-year look-back period in I.R.C. § 6511(b)(2) via the financial disability exception in I.R.C. § 6511(h) for whatever

period Mr. Goldman was both financially disabled and did not have an authorized third-party to act on his behalf in financial matters.[5]  As an initial matter, Mr. Goldman alleges he was financial disabled only from November 2017 until February 2022, Pl. Ex. at 53; on October 24, 2023, Mr. Goldman filed his 2017 personal income tax return, Compl. at 4. Thus, for approximately a year and nine months (*i.e.*, from February 2022 through October 24, 2023), there is no question that Mr. Goldman, by his own admission, was not financially disabled.

That leaves Mr. Goldman with only approximately a year and three months of the three-year look-back period during which he may potentially qualify for tolling. Mr. Goldman's 2017 personal income tax was "deemed paid" on April 15, 2018. *See* I.R.C. § 6513(b)(2).  Therefore, *absent tolling*, the three-year look-back period of I.R.C. § 6511(b)(2) would begin to run on April 15, 2018.  But Mr. Goldman would be entitled to I.R.C. § 6511(h) tolling — such that he could take advantage of whatever remains of the three-year look-back provision, *see* § I.R.C. 6511(b)(2) — **if and only if** Mr. Goldman's relationship with his accountant terminated less than approximately a year and three months after April 15, 2018.

Mr. Goldman nowhere indicates the precise date of when he and his accountant terminated their professional relationship, *see* Compl. at 3.  Accordingly, this Court is unable to determine if Mr. Goldman qualifies for tolling pursuant to I.R.C. § 6511(h) such that he could take advantage of whatever little (or much) remains of the three-year look-back provision, I.R.C. § 6511(b)(2).  In the absence of any allegation in the complaint — or anywhere else — regarding the precise duration of Mr. Goldman's relationship with his accountant, this Court is inclined to conclude that Mr. Goldman fails to state a claim upon which relief may be granted because his recovery of any overpaid tax at issue is completely precluded by the look-back provision, I.R.C. § 6511(b)(2).  *Murdock,* 103 Fed. Cl. at 396; *Martinez v. United States*, 2013 WL 3940958, at *4 (Fed. Cl. July 25, 2013).

---

[5] When analyzing I.R.C. § 6511(h)(2)(B), the critical question is whether a taxpayer authorized a third-party to file his or her administrative refund claim (which is oftentimes included with a taxpayer's tax return, as was the case here with Mr. Goldman's refund claim).  Broad authority to act in all other financial matters of the taxpayer is not required.  *See Plati v. United States*, 99 Fed. Cl. 634, 640 (2011) (concluding that because taxpayer granted her son authority to file her tax return (which included a refund claim due to a pervious overpayment), taxpayer did *not* qualify for the § 6511(h) financial disability given the explicit "carve out" to that exception,  I.R.C. § 6511(h)(2)(B)).

*Second*, I.R.C. § 6511(h)(2)(A) provides that "[a]n individual shall *not be considered* [financially disabled] unless proof of the existence thereof is furnished in such *form* and *manner* as the Secretary may require." I.R.C. § 6511(h)(2)(A) (emphasis added). The Secretary of the Treasury, via Revenue Procedure 99-21, sets forth the "form and manner," I.R.C. § 6511(h)(2)(A), in which a taxpayer must furnish proof of financial disability to qualify for that exception pursuant to I.R.C. § 6511(h), and thus toll the limitation "periods" in I.R.C. § 6511. Rev. Proc. 99-21, 1999-1 C.B. 960. Revenue Procedure 99-21, in turn, requires a taxpayer to submit two statements to the IRS: (1) a physician statement describing a specific impairment that "prevented" the taxpayer from managing the taxpayer's financial affairs during a "*specific time period*"; and (2) a statement by the taxpayer seeking a refund, indicating either (a) that nobody "was authorized to act on behalf of the taxpayer in financial matters during the period" set out in the physician's statement, *or* (b) "if a person was authorized to act on behalf of the taxpayer in financial matters during any part of the period [set out in the physician's statement] the *beginning* and *ending* date[] . . . the person was so authorized." Rev. Proc. 99-21, § 4. (emphasis added). Furthermore, Revenue Procedure 99-21 requires these two statements "be submitted with the taxpayer's claim for credit or refund of tax," *id.* § 1, and emphasizes that 6511(h)(2)(A) requires the statements "be furnished to the [IRS,]" *id.* § 2.

While some judges of this Court demand a taxpayer's "strict compliance" with Revenue Procedure 99-21 to qualify for "financial disability" pursuant to I.R.C. § 6511(h), *see, e.g.*, *Est. Rubinstein v. United States*, 96 Fed. Cl. 640, 652 (2011) (citations omitted), others require a taxpayer to — at the very least — "substantially comply" with Revenue Procedure 99-21. *See, e.g.*, *Martinez*, 2013 WL 3940958, at *8 ("Failure to . . . substantially compl[y] with Revenue Procedure 99–21 denies a taxpayer recourse to the tolling provision in § 6511(h)."). And, where this Court determines that a plaintiff had not met the requirements of I.R.C. § 6511(h), that means the plaintiff cannot avoid the application of § 6511(b), and dismissal is proper pursuant to RCRC 12(b)(6). *See Schallmo*, 825 F. App'x at 828-29.

Here, Mr. Goldman's physician statement submitted to IRS Appeals certified that he suffered from major depressive disorder, which prevented Mr. Goldman from managing his financial affairs from November 2017 through February 2022. Pl. Ex. at 53. That statement complied with the first requirement of Revenue Procedure 99-21. The same, however, cannot be said about Mr. Goldman's own required statement. *Id.* at 55. For that statement, Mr. Goldman first certified that during the period between November

2017 to February 2022 — *i.e.*, the period set forth in the physician statement — "*no person including [his] wife [] was authorized to act on [his] behalf in financial affairs.*" *Id.* (emphasis added).  But then Mr. Goldman further certified that his accountant "received all the proper authorizations" to file Mr. Goldman's 2017 personal income tax return.  *Id.* The problem, however, as explained above, is that Mr. Goldman never specified "the *beginning* and *ending* dates . . . the [accountant] was so authorized." Rev. Proc. 99-21, § 4 (emphasis added).

Essentially, then, Mr. Goldman's statement included two mutually exclusive factual certifications, while omitting critical, required information, contrary to Revenue Procedure 99-21.  That means that even if the IRS and this Court were to liberally construe Mr. Goldman's statement as certifying that nobody *other than* his accountant was authorized to act on Mr. Goldman's behalf in filing his 2017 personal income tax return, Mr. Goldman's statement would fall short of complying with Revenue Procedure 99-21 because Mr. Goldman did not specify "the beginning and ending dates" of his accountant's authorization.

Where a taxpayer certifies that someone was authorized to act on his or her behalf in financial affairs, but fails to specify the exact window of that authorization, the omission is fatal.  I.R.C. § 6511(h)(2)(B) provides that "[a]n individual shall *not be treated as financially disabled* during any period that . . .  any other person is authorized to act on behalf of such individual in financial matters."  I.R.C. § 6511(h)(2)(B) (emphasis added). Once a taxpayer establishes the outer bounds of when he or she could be considered financially disabled — *i.e.*, via a physician's statement which lists a specific period of financial impairment — the second requirement in Revenue Procedure 99-21 serves to either confirm that the taxpayer was financial disabled for the entire period listed in the physician's statement, or to limit the period of disability by excluding the period where someone was authorized to act on the taxpayer's behalf.  A statement like Mr. Goldman's, which does not specify the *exact period* of any third-party authorization, does not permit the IRS to determine the precise period of financial disability, and thus does not meet the requirements to successfully invoke I.R.C. § 6511(h).

In *Redondo v. United States*, our appellate court, the United States Court of Appeals for the Federal Circuit found that the plaintiff in that case failed to comply with Revenue Procedure 99-21 and thus could not qualify for I.R.C. § 6511(h) tolling.  542 F. App'x 908, 911 (Fed. Cir. 2013).  That, in part, was because the plaintiff submitted a physician statement to the IRS that did not "indicate a specific time period during which [the

plaintiff] was unable to attend to his financial affairs." *Id.* at 910. Similarly, this Court is inclined to conclude that Mr. Goldman flunked the requirements of Revenue Procedure 99-21 because he did not indicate a specific period during which his accountant was authorized to handle Mr. Goldman's financial affairs. In other words, Mr. Goldman's own statement neither "strictly" nor "substantially" complied with Revenue Procedure 99-21. *See Rubinstein*, 96 Fed. Cl. at 652 (explaining that some decisions of this Court require "strict compliance" with Revenue Procedure 99-21); *Martinez*, 2013 WL 3940958, at *8 ("Failure to . . . substantially compl[y] with Revenue Procedure 99–21 denies a taxpayer recourse to the tolling provision in § 6511(h).").

In sum, by failing to comply — substantially or otherwise — with Revenue Procedure 99-21, Mr. Goldman did not conform with the IRS's "*form* and *manner*" requirements to obtain the benefit of I.R.C. § 6511(h)'s tolling provision. I.R.C. § 6511(h)(2)(A) (emphasis added). As discussed *supra*, without the benefit of tolling, Mr. Goldman's administrative refund claim was filed more than five years after he paid his 2017 income tax — well outside the three-year look-back of I.R.C. § 6511(b)(2). Accordingly, this Court is inclined to conclude that Mr. Goldman fails to state a claim upon which relief may be granted because his recovery of any overpaid tax at issue is completely precluded by the look-back provision, I.R.C. § 6511(b)(2). *Murdock,* 103 Fed. Cl. at 396; *Martinez*, 2013 WL 3940958, at *4.

It is far from clear whether this Court may determine *de novo* whether Mr. Goldman qualifies for I.R.C. § 6511(h)'s tolling provision specifically where a plaintiff has failed to comply with the IRS's "form and manner" requirements. I.R.C. § 6511(h)(2)(A). The United States Court of Appeals for the Eighth Circuit has explained, for example, that "[t]he limited waiver of sovereign immunity in § 6511(h) does not grant [] courts power to decide *de novo* that a taxpayer was financially disabled." *Abston v. Comm'r*, 691 F.3d 992, 995 (8th Cir. 2012); *see also Chan v. Comm'r*, 693 F. App'x 752, 756 (10th Cir. 2017) (concluding that because Revenue Procedure 99-21 requires proof of "financial disability" be submitted *to the IRS*, "district court[s] cannot make a determination of financial disability if [a taxpayer-plaintiff] did not first provide the requisite proof to the IRS" (citing *Abston*, 691 F.3d at 995)).[6]

---

[6] While not binding on the undersigned, another judge of this Court has previously held that we cannot decide *de novo* that a taxpayer qualifies for "financial disability" pursuant to I.R.C. § 6511(h). In *Ruebsamen*, Senior Judge Smith dismissed a tax refund suit, where the plaintiff unsuccessfully invoked I.R.C. § 6511(h) to toll the three-year statute of limitation in I.R.C. § 6511(a). *Ruebsamen*, 2022 WL 2315722, at *1, 4-5. In that case, the plaintiff submitted the two

Accordingly, this Court **ORDERS** Mr. Goldman to **SHOW CAUSE** why this Court should not dismiss this case for failure to state a claim pursuant to RCFC 12(b)(6) because **(1)** Mr. Goldman, in his complaint, did not note the *exact date* he and his accountant terminated their professional relationship; and **(2)** Mr. Goldman, during his IRS appeal, failed to comply — substantially or otherwise — with Revenue Procedure 99-21 by omitting "the beginning and ending dates" of his accountant's authorization. Mr. Goldman's response shall be broken out into two separately numbered sections, corresponding to these two issues. Mr. Goldman's response to the first show cause issue must indicate the *precise* date, if any, Mr. Goldman and his accounted terminated their professional relationship.[7] His response to the second show cause issue must include — at minimum — *either*: **(a)** a discussion of why and how it is still not too late for Mr. Goldman to meet the "form and manner" requirements in I.R.C. § 6511(h)(2)(A); *or* **(b)** a narrative — supplemented with proper documentation — that demonstrates that Mr. Goldman *did* comply with the "form and manner" requirements during the IRS claims process.

---

statements required by Revenue Procedure 99-21 directly to the Court (but had not submitted them to the IRS). *Id.* at *1-2. Revenue Procedure 99-21, however, expressly requires the two statements "be furnished to the Internal Revenue Service." Rev. Proc. 99-21, § 2. Because the plaintiff in *Ruebsamen* did not comply with Revenue Procedure 99-21, Senior Judge Smith concluded that the "plaintiff fail[ed] to qualify for the financial disability exception under [] 6511(h)." *Ruebsamen*, 2022 WL 2315722, at *5.

[7] Mr. Goldman, in his response brief, alleges that in September 2022 his accountant *first* "stopped performing . . . the tax preparation services . . . she had been paid for," which ultimately triggered their split. Pl. Resp. at 13. Mr. Goldman, however, contradicts that statement in a breach of contract suit he filed in the Superior Court of New Jersey — which Mr. Goldman attached to his response brief — alleging that his accountant was paid for filing his 2017 and 2018 tax returns (*only*), but failed to file them. ECF No. 16-17 at 7. Specifically, the latter statement contradicts the former in that it indicates: (1) Mr. Goldman's accountant was *not* paid to file tax returns for 2019 and onward; and (2) Mr. Goldman's accountant already stopped performing her duties by the 2017-18 tax periods and thus the two parted ways *before* September 2022. Moreover, neither of those factual assertions in Mr. Goldman's response brief can be squared with what Mr. Goldman alleged in his complaint, where he alleges that the *reason* the two parted ways was *because* Plaintiff "*fell behind in paying [his accountant's] fees*" and therefore "[his accountant] stopped work on [Mr. Goldman's] account," not the other way around. Compl. at 3 (emphasis added). Suffice it to say that a response to this Court's first show cause issue must include a consistent narrative, indicating a single date of termination.

Mr. Goldman shall file his response to the order to show cause on or before **March 9, 2026**.  Moreover, Mr. Goldman's response to this show cause order shall not exceed 15 pages, 12 pt. Times New Roman font, double-spaced, with singe inch margins.

Within 21 days of Mr. Goldman's filing a response to this order, the government shall file a response brief, subject to the same page and format restrictions.   The government's response shall address, at minimum: (1) the standard of review generally applicable to the merits of a tax refund suit in this Court; (2) the standard of review applicable to a financial disability claim and, if it differs from the typical standard, why; (3) whether Mr. Goldman's response to the show cause order — including any newly provided evidence — adequately addresses the concerns raised in this show cause order; and (4) whether, in light of Mr. Goldman's response, this Court should remand this case to the IRS to consider any additional information or evidence regarding his claimed financial disability.

**IT IS SO ORDERED**.

<u>s/Matthew H. Solomson</u>
Matthew H. Solomson
Chief Judge