# In the United States Court of Federal Claims

No. 24-1920T

(Filed: September 1, 2026)

| | |
|---|---|
| **MICHAEL GOLDMAN,** | ) |
| ***Plaintiff,*** | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| ***Defendant.*** | ) |

*Michael Goldman*, New York, NY, *pro se*.

*Jacqueline Muallem*, United States Department of Justice, Tax Division, Washington, DC, for Defendant. With her on the briefs was *Michael Thomas Collins*, United States Department of Justice, Tax Division, Washington, DC.

## OPINION AND ORDER

***SOLOMSON*, Chief Judge.**

Plaintiff, Mr. Michael Goldman, seeks a refund of an income tax overpayment for the 2017 tax year, after the Internal Revenue Service ("IRS") and the IRS Independent Office of Appeals ("IRS Appeals") denied his administrative refund claim. Defendant, the United States, moves to dismiss Mr. Goldman's claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for, respectively, lack of jurisdiction and failure to state a claim. For the reasons explained below, this Court dismisses Mr. Goldman's complaint pursuant to RCFC 12(b)(6) for failure to state a claim. While this Court is sympathetic to Mr. Goldman's predicament, this Court is ultimately bound by the statutes Congress has enacted. Here, those laws — as interpreted by the United States Supreme Court, and our appellate court, the United States Court of Appeals for the Federal Circuit — preclude Mr. Goldman's tax overpayment claim here as a matter of law.

## I. FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND[1]

In November 2017, Mr. Goldman was diagnosed with major depressive disorder ("medical condition"). ECF No. 1-3 ("Pl. Ex.") at 53.[2] With the onset of his medical condition, Mr. Goldman — who typically managed both his and his wife's financial matters — became "severely impaired and was unable to manage" those matters. *Id.*; *see also* ECF No. 1 ("Compl.") at 3. This impairment lasted until at least February 2022. *See* Pl. Ex. at 53.

Prior to and during the 2017 tax year, Mr. Goldman retained an accountant "responsible for all bookkeeping and the filing of Corporate and Personal Tax Returns [sic]." Compl. at 3. Despite filing Mr. Goldman's 2017 corporate tax return (plus various state and local returns), Mr. Goldman's accountant failed to file Mr. Goldman and his wife's joint 2017 personal income tax return.[3] *Id.* The prepared, but unfiled, return included a claim for a refund in the amount of $7,977.00, due to a previous overpayment. *Id.*

Sometime in 2023, Mr. Goldman noticed that his 2017 personal income tax return had never been filed. Compl. at 4. On October 24, 2023, Mr. Goldman late-filed his 2017 personal income tax return, which included a claim for a refund in the amount of $7,977.00. *Id.*; *see also* Pl. Ex. at 40. The IRS, however, denied his refund claim. *Id.* Mr. Goldman appealed to IRS Appeals, which ultimately upheld the denial of his claim. *Id.* at 46-47, 61.

The central problem with Mr. Goldman's refund claim — according to the IRS — was that it was late pursuant to § 6511(b)(2)(A) of the Internal Revenue Code (I.R.C.).[4] Pl. Ex. at 40, 61. As discussed further below, I.R.C. § 6511(b)(2)(A) limits the *amount* of refund for a timely-filed administrative claim to the portion of the overpayment, if any,

---

[1] As discussed in further detail below, this Court assumes all of the facts — but not legal conclusions — alleged in Plaintiff's complaint (including its attachments) are true for the purpose of resolving the government's pending motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[2] Page number citations are to the ECF-designated page number electronically stamped on the top of each page of a filed document.

[3] All references to Mr. Goldman's 2017 personal income tax return herein refer to Mr. Goldman's and his wife's joint return.

[4] Title 26 of the United States Code is the I.R.C.

made within the three years "immediately preceding the filing of the claim[.]" I.R.C. § 6511(b)(2)(A). Here, Mr. Goldman's 2017 income tax was "deemed paid" on April 15, 2018, *see* I.R.C. § 6513(b)(2) — more than five years before he filed his 2017 refund claim.

On November 20, 2024, Mr. Goldman, proceeding *pro se*, filed suit for a tax refund in this Court. *See* Compl. Mr. Goldman alleges that both the IRS and IRS Appeals improperly denied his 2017 refund claim. *Id.* at 5. Specifically, Mr. Goldman contends that he was "legitimately financially disabled during the period from November 2017 through February 2022." *Id.* Thus, Mr. Goldman contends that he is entitled to tolling of I.R.C. § 6511(b)'s limitation period pursuant to I.R.C. § 6511(h)'s "financial disability" exception, discussed *infra*.[5] On February 20, 2025, the government filed a motion to dismiss for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1) and, in the alternative, for failure to state a claim, pursuant to RCFC 12(b)(6). ECF No. 13 ("Def. Mot."). On March 21, 2025, Mr. Goldman filed his response in opposition to the government's motion. ECF No. 16. The government filed its reply in support of its motion to dismiss on April 3, 2025. ECF No. 17.

On January 21, 2026, this Court issued an order to show cause, requiring Mr. Goldman to explain why this Court should not dismiss this case for failure to state a claim. *Goldman v. United States*, 2026 WL 183812, at *1 (Fed. Cl. Jan. 21, 2026). Specifically, this Court explained to Mr. Goldman that even setting aside the government's arguments for why Mr. Goldman's claim should be dismissed, "a critical piece of information [was] missing both from Mr. Goldman's submission to IRS Appeals — and again to this Court — pertaining to his financial disability claim." *Id.* at *2. Pursuant to this Court's order, *id.* at *6, Mr. Goldman filed his response to the order on March 9, 2026. ECF No. 20 ("Pl. Supp. Br."). The government filed its response on March 30, 2026. ECF No. 21.

## II. JURISDICTION

### A. This Court Has Jurisdiction to Decide Tax Refund Claims

This Court's jurisdiction is primarily defined by the Tucker Act, 28 U.S.C. § 1491, which grants the Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the

[5] Mr. Goldman also raised a financial disability claim with IRS Appeals. Pl. Ex. at 61. Mr. Goldman did not, however, raise a financial disability claim with his *initial* IRS claim. *See id.* at 55.

United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." (citation omitted)). Thus, the Tucker Act vests this Court with jurisdiction and waives the sovereign immunity of the United States for "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).

Illegal exaction claims involve "money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or regulation.'" *Norman*, *v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). To properly plead an illegal exaction claim, a plaintiff need not point to a money-mandating source of law. *Boeing Co. v. United States*, 968 F.3d 1371, 1382-84 (Fed. Cir. 2020) (finding jurisdiction over a statutory illegal exaction claim without regard to whether the statute is money-mandating); *Perry v. United States*, 149 Fed. Cl. 1, 32 (2020) ("[T]here is no basis to engraft money-mandating requirements onto illegal exaction claims . . . [A] plaintiff need not identify a money-mandating provision of law to invoke this Court's jurisdiction for an illegal exaction claim." (citations omitted)), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021). Instead, a claim must simply allege that "the Government has the citizen's money in its pocket." *Eastport*, 372 F.2d at 1008 (quoting *Clapp v. United States*, 127 Ct. Cl. 505, 512 (1954), cert. denied). "The classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government." *Norman*, 429 F.3d at 1095 (citation omitted).

The statutory grant of jurisdiction to the district court to decide tax refund claims confirms our Court's jurisdiction over such cases. In that regard, Chapter 85 of Title 28 of the United States Code addresses the jurisdiction of the United States district courts. Within that chapter, 28 U.S.C. § 1346 provides the district courts with "original jurisdiction, *concurrent with the United States Court of Federal Claims*" over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]" 28 U.S.C. § 1346(a)(1)

(emphasis added). Section 1346 thus reinforces that the Court of Federal Claims has jurisdiction to decide tax refund suits. *See Tonasket v. United States*, 590 F.2d 343 (Ct. Cl. 1978) (describing 28 U.S.C. § 1346(a)(1) as "the District Court analogue, for tax refund cases, of our jurisdictional provision, 28 U.S.C. § 1491"); *S. Puerto Rico Sugar Co. Trading Corp. v. United States*, 334 F.2d 622, 626 (Ct. Cl. 1964) (explaining that "[t]ax refund suits are the most common" illegal exaction claims pursuant to the Tucker Act, 28 U.S.C. § 1491 (citations omitted)); *John Muir Mem'l Hosp., Inc. v. United States*, 221 Ct. Cl. 843, 846 (1979) ("Where Congress wishes to preserve jurisdiction in the Court of Claims when later consenting to suits elsewhere, it is careful to say that Court of Claims jurisdiction survives, as in 28 U.S.C. § 1346(a) (tax refund claims)."); *but see Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023) ("In short, § 1346(a)(1) *gives* the Court of Federal Claims jurisdiction to hear tax refund cases[.]" (emphasis added)).

**B. This Court Has Jurisdiction to Decide Mr. Goldman's Tax Refund Claim**

As an initial matter, Mr. Goldman alleges that the government has his "money in its pocket," *Eastport*, 372 F.2d at 1008; Mr. Goldman alleges that the IRS erroneously refused to return his 2017 personal income tax overpayment. Compl. at 5. Thus, Mr. Goldman's tax refund claim is as an illegal exaction claim pursuant to 28 U.S.C. § 1491(a)(1).

Although the Court of Federal Claims generally has jurisdiction to hear and decide tax refund claims pursuant to 28 U.S.C. § 1491(a)(1), like Mr. Goldman's, Congress has imposed several jurisdictional prerequisites to filing such a suit here via various I.R.C. provisions. *RadioShack*, 566 F.3d at 1360 (citing *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008)).

*First*, a plaintiff must have paid any disputed taxes in full prior to bringing a refund suit for the claimed sum at issue; that rule applies to tax refund suits in this Court just as it does in district court:

> The Claims Court, concurrently with the United States District Courts, has jurisdiction over suits for the refund of taxes. *See* 28 U.S.C. §§ 1346(a)(1), 1491 (1988). The jurisdictional grant, however, has been construed by the Supreme Court as requiring full payment of the assessed tax liability before suit can be commenced. In *Flora v. United*

> *States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), a tax refund suit was initiated in the district court before full payment of the tax had been made. The Supreme Court held that "§ 1346(a)(1), correctly construed, requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court." *Flora,* 362 U.S. at 177, 80 S.Ct. at 647. The full payment rule of *Flora* has long been applied by the Claims Court, and before that by the Court of Claims, to dismiss tax refund suits against the United States when the assessment has not been paid in full prior to commencement of the action.

*Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) (citations omitted). In other words, "[t]he *Flora* full payment rule requires that taxpayers prepay the tax principal before the Court of Federal Claims will have subject matter jurisdiction over their tax refund action[.]" *Shore v. United States*, 9 F.3d 1524, 1527 (Fed. Cir. 1993).

In this case, Mr. Goldman fully paid his 2017 personal income tax via estimated tax payments throughout that year, *see* Pl. Ex. at 21, prior to initiating his tax refund suit on November 20, 2024. *See* Compl. Mr. Goldman thus satisfied the *Flora* full payment rule.

*Second*, I.R.C. § 7422(a) "require[es] a taxpayer to file [an] administrative claim [with the IRS] before seeking a refund in court." *EC Term of Years Tr. v. United States*, 550 U.S. 429, 431 n.2 (2007). I.R.C. § 7422(a), in relevant part, provides:

> No suit [] shall be maintained in any court for the recovery of any internal revenue tax alleged to have been . . . excessive . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

I.R.C. § 7422(a). Accordingly, "[i]n order for a plaintiff's suit for a refund of federal taxes to fall within the Tucker Act's waiver of sovereign immunity, the plaintiff must meet the jurisdictional threshold for filing a refund claim under I.R.C. § 7422(a)." *Koopmann v.*

*United States*, 2022 WL 1073340, at *4 (Fed. Cir. Apr. 11, 2022) (citing *Clintwood*, 553 U.S. at 4). In essence, then, I.R.C. § 7422(a) "limits a taxpayer's right to bring a refund suit." *United States v. Dalm*, 494 U.S. 596, 601 (1990).

*Third*, "[b]ased on this jurisdictional pre-requisite for a refund claim," the Federal Circuit "derived the 'substantial variance' doctrine[,]" pursuant to which "a taxpayer may not substantially vary either the factual or the legal basis of any claim for refund in court from those presented in its administrative claim before the IRS." *W. Co. Of N. Am. v. United States*, 323 F.3d 1024, 1034 (Fed. Cir. 2003) (citing *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000)); *see also Devine v. United States*, 155 Fed. Cl. 193, 207 (2021) (explaining that the substantial variance doctrine precludes a taxpayer from "maintain[ing] a refund suit based on *factual* or *legal* grounds not raised in the [administrative] claim for a refund" (emphasis added)) (citing *Computervision Corp. v. United States*, 445 F.3d 1355, 1364 n.8 (Fed. Cir. 2006)). In essence, a suit in this Court based on different grounds than those previously asserted in an administrative claim to the IRS is simply a new claim (*i.e.*, where the administrative claim prerequisite has not been satisfied).[6]

Here, Mr. Goldman met these jurisdictional requirements: First, he included an administrative claim for a refund with his late-filed 2017 personal income tax return. Compl. at 4; Pl. Ex. at 40. Moreover, the ground for Mr. Goldman's claimed refund in his claim before this Court is the same as that set out in his initial administrative refund claim; Mr. Goldman asserted — and continues to assert — that he is entitled to a refund due to his pervious overpayment of taxes. Pl. Ex. at 21; Compl. at 5. Indeed, the IRS conceded that Mr. Goldman overpaid his 2017 income tax but nevertheless denied Mr. Goldman's claim solely "because [he] filed [his] return more than 3 years after [his] most recent payment." Pl. Ex. at 40. Thus, Mr. Goldman properly submitted an

---

[6] As noted *supra*, I.R.C. § 7422(a) requires "a taxpayer [to] have timely filed a refund claim *in the manner prescribed by regulation*." *Lua v. United States*, 843 F.3d 950, 957 (Fed. Cir. 2016) (emphasis added) (discussing § 7422(a)). "The Secretary by regulation requires that claims for refund '*set forth in detail each ground* upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.'" *Computervision*, 445 F.3d at 1363 (quoting 26 C.F.R § 301.6402–2(b)(1) (2005)). The Federal Circuit has "interpreted this statute and regulation as stating a 'substantial variance' rule that bars taxpayers from bringing new claims or facts not alleged in the refund application to a court in which suit for refund is sought." *Lua*, 843 F.3d at 957 (citing *Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1366 (Fed. Cir. 2013)). "The doctrine benefits the IRS by limiting 'any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend.'" *Devine*, 155 Fed. Cl. at 207 (quoting *Lockheed Martin*, 210 F.3d at 1371).

administrative claim for a refund to the IRS and his claim in this Court does not substantially vary from his administrative claim.

The government attempts to persuade this Court that Mr. Goldman's tax refund claim here "substantially varies" from his initial administrative refund claim because, as noted above, Mr. Goldman did not assert "financial disability" — to avoid limitation periods — until initiating his IRS appeal. Def. Mot. at 10-12. The government's argument is without merit, however, because financial disability does not relate to facts and legal arguments underlying a putative refund claim and, thus, are irrelevant to questions of substantial variance. This is evident from the fact that had Mr. Goldman not made a financial disability claim before the IRS, the government would not have invoked the substantial variance doctrine at all; rather, a plaintiff cannot raise a financial disability claim before this Court for the first time given the "form and manner" requirements of I.R.C. § 6511(h)(2)(A). That section provides that "[a]n individual shall *not be considered* [financially disabled] unless proof of the existence thereof is furnished in such *form* and *manner* as the Secretary may require." I.R.C. § 6511(h)(2)(A) (emphasis added). The Secretary of the Treasury, via Revenue Procedure 99-21, sets forth the "form and manner," I.R.C. § 6511(h)(2)(A), in which a taxpayer must furnish proof of financial disability to qualify for that exception pursuant to I.R.C. § 6511(h), and thus toll the limitation "periods" in I.R.C. § 6511. Rev. Proc. 99-21, 1999-1 C.B. 960. Furthermore, Revenue Procedure 99-21 requires these two statements "be submitted with the taxpayer's claim for credit or refund of tax," *id.* § 1, and emphasizes that 6511(h)(2)(A) requires the statements "be furnished to the [IRS,]" *id.* § 2. As the United States Court of Appeals for the Eighth Circuit has explained, for example, "[t]he limited waiver of sovereign immunity in § 6511(h) does not grant [] courts power to decide *de novo* that a taxpayer was financially disabled." *Abston v. Comm'r*, 691 F.3d 992, 995 (8th Cir. 2012). The substantial variance doctrine is thus inapposite to a financial disability claim pursuant to I.R.C. § 6511(h).

*Fourth*, in addition to the baseline requirement to file an administrative refund claim, the Supreme Court, in *Dalm*, held that I.R.C. § 7422(a) encompasses a jurisdictional requirement for a plaintiff to have filed a *timely* administrative refund claim pursuant to I.R.C. § 6511(a).[7] *Dalm*, 494 U.S. at 601-02. I.R.C. § 6511 prescribes several time limitations

[7] In *Dougherty Electric, Inc. v. United States*, 182 F.4th 963 (Fed. Cir. 2026), the Federal Circuit recently declined to decide whether noncompliance with any of § 7422(a)'s various administrative requirement remains a jurisdictional defect, reasoning that even if compliance is unnecessary to a court's jurisdiction, it remains necessary to a taxpayer's refund claim — so that noncompliance warrants dismissal either way: if not under RCFC 12(b)(1), then under RCFC 12(b)(6). *Id.* at 970.

that apply to taxpayer refund claims.[8] In particular, I.R.C. § 6511(a) provides that a taxpayer must file an administrative refund claim with the IRS within three years of the filing of a tax return for the period of the overpayment. The Federal Circuit has interpreted that provision to permit a taxpayer to file a refund claim within three years of the taxpayer's filing of a tax return, *irrespective of whether such return was filed on time, or late*. *Boeri v. United States*, 724 F.3d 1367, 1369 (Fed. Cir. 2013) ("Sections 6511(a) and 6511(b)(1) require that a taxpayer bring a refund claim within three years of filing a return, regardless of the return's actual due date.").[9]

Here, because Mr. Goldman's 2017 personal income tax return — filed on October 24, 2023 — included a claim for a refund, Compl. at 3, Mr. Goldman's filing of his 2017 personal income tax return simultaneously constituted the filing of a (timely) administrative refund claim. *See Wertz v. United States*, 51 Fed. Cl. 443, 446 (2002).

*Fifth*, a plaintiff must file suit in this Court within the prescribed statute of limitations. 26 U.S.C. § 6532; *Taha v. United States*, 757 F. App'x 947, 951 (Fed. Cir. 2018) (noting that 26 U.S.C. § 6532 "establishes jurisdictional time limitations on tax refund suits"). "Section 6532(a) states two rules for the timing of the action in court. First, no

---

The court in *Dougherty* explained that the precise characterization of the proper dismissal lens matters only where the taxpayer offers some excuse for noncompliance that would be unavailable were the requirement jurisdictional. *Id.* Until — and unless — the Federal Circuit decides that § 7422(a)'s administrative requirements do not implicate this Court's jurisdiction, this Court views these administrative claim issues as jurisdictional. This Court further notes that other circuits continue to treat noncompliance with § 7422(a)'s various requirements as jurisdictional defects. *See, e.g.*, *Jeanmarie v. Rettig*, 836 F. App'x 335, 336 (5th Cir. 2021) (affirming dismissal of plaintiff's § 7422 claim for lack of jurisdiction because it was not perfected); *Crouch v. Internal Revenue Service*, 2025 WL 2048732, at *1 (6th Cir. Apr. 10, 2025) (uncontested noncompliance with § 7422(a) would deprive the district court of jurisdiction), *cert. denied*, 146 S. Ct. 233 (2025); *Cobai v. United States*, 2026 WL 208338, at *1 (9th Cir. Jan. 27, 2026) (affirming dismissal on jurisdictional grounds where the taxpayer alleged no facts showing exhaustion, and where the submission did not specify each ground for refund as Treas. Reg. § 301.6402-2(b)(1) requires), *cert. denied*, 2026 WL 1513322 (U.S. June 1, 2026).

[8] I.R.C. § 6511 provides for two sets of *administrative* time limitations — one governing the case where a taxpayer filed a tax return for the period at issue, and a second for a taxpayer who did not file a tax return. Because Mr. Goldman filed a 2017 personal tax return, *see* Compl. at 4; Pl. Ex. at 40, this Court only addresses the limitation periods in I.R.C. § 6511 governing the case where a taxpayer filed a tax return.

[9] This would seem to create a bizarre anomaly in which a taxpayer who timely files his or her return would have an untimely refund claim, but a late filed return may render the refund claim timely. But that is a problem for another day.

such suit 'shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time.'" *Dixon*, 67 F.4th at 1160 (quoting 26 U.S.C. § 6532(a)(1)). Second, "[a] tax refund suit must be brought within two years from the date the IRS mails the first notice of disallowance for a refund claim." *Taha*, 757 F. App'x at 951 (citing 26 U.S.C. § 6532(a)(1)).

With respect to Mr. Goldman's 2017 administrative refund claim, the IRS mailed its first notice of disallowance to Mr. Goldman on February 16, 2024. Compl. at 3; Pl. Ex. at 40. Mr. Goldman filed his refund suit in this Court on November 20, 2024. Accordingly, Mr. Goldman's suit before this Court is well within the statute of limitations of I.R.C. § 6532(a).

In sum, because Mr. Goldman met all the jurisdictional preconditions to the government's waiver of sovereign immunity, and because his claim before this Court does not substantially vary from his administrative refund claim pursuant to I.R.C. § 7422(a), this Court has jurisdiction to decide Mr. Goldman's tax refund claim. The government's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1) is, accordingly, **DENIED**.

## III. STANDARD OF REVIEW FOR RCFC 12(B)(6)

When considering a motion to dismiss a complaint for failure to state a claim on which the Court may grant relief pursuant to RCFC 12(b)(6), the Court accepts as true all factual allegations — but not legal conclusions — contained in a plaintiff's complaint. *See Twombly*, 550 U.S. at 555. For a plaintiff's complaint to survive a motion to dismiss, the Court — viewing the facts in the light most favorable to the plaintiff — must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

## IV. DISCUSSION

### A. Mr. Goldman's Refund Claim Must Be Dismissed Pursuant to the "Look-Back" Provision in I.R.C. § 6511(b)(2)

I.R.C. § 6511(b)(2) limits the *amount* of refund for a timely-filed claim to the portion of the overpayment, if any, made within the three years "immediately preceding the filing of the claim[.]" I.R.C. § 6511(b)(2)(A). The Supreme Court treats I.R.C. § 6511(b)(2) as a "look-back" provision, explaining that "it is not a [jurisdictional] 'statutory time . . . limitation[ ]' but rather a 'substantive limitation[ ] on the amount of recovery.'" *Boeri*, F.3d at 1369 (second and third alterations in original) (quoting *United States v. Brockamp*, 519 U.S. 347, 348, 352 (1997)). Accordingly, even if a taxpayer filed a timely refund claim pursuant to I.R.C. § 6511(a), he or she would be ineligible for a refund if the claim was for sums paid to the government outside the look-back period defined in I.R.C. § 6511(b)(2). *Boeri*, F.3d at 1370-71; *see also Martinez v. United States*, 2013 WL 3940958, at *4 (Fed. Cl. July 25, 2013) (explaining that "even when a plaintiff has satisfied the timeliness requirement in § 6511(a), no recovery is possible unless that plaintiff has also paid taxes during the relevant 'look-back' period" (citing *Doyle v. United States*, 88 Fed. Cl. 314, 321–22 (2009))).

Thus, a refund claim seeking sums paid that are outside the look-back period must be dismissed for failure to state a claim. *See Schallmo v. United States*, 825 F. App'x 826, 828-29 (Fed. Cir. 2020) (affirming trial court's decision granting the government's motion to dismiss for *failure to state a claim* where plaintiff's taxes were paid more than three years prior to the filing of his otherwise timely refund request — thus running afoul of I.R.C. § 6511(b)(2)).

Although Mr. Goldman's administrative refund claim was timely, in general — as was his suit in this Court — his recovery is limited to taxes paid during the three-year look-back period, as provided in I.R.C. § 6511(b)(2). *See, e.g., Martinez*, 2013 WL 3940958, at *4. Here, that means Mr. Goldman may obtain a money judgment for, at most, taxes paid on or after October 24, 2020. This is where Mr. Goldman's tax refund claim flounders.

In determining whether a taxpayer remitted taxes to the IRS within the look-back period, I.R.C. § 6511(b)(2), courts consider when taxes were "deemed paid" pursuant to I.R.C. §§ 6513(b). *See Baral v. United States*, 528 U.S. 431, 434-35 (2000). Because Mr. Goldman fully paid his 2017 personal income tax via estimated tax payments

throughout that year, *see* Pl. Ex. at 21, his 2017 personal income tax was "deemed paid" on April 15, 2018. *See* I.R.C. § 6513(b)(2). The fatal problem, then, for Mr. Goldman's tax refund claim is that he only first filed his administrative refund claim on October 24, 2023 — more than *five* years after he paid his 2017 income tax, and well beyond the three-year look-back period, I.R.C. § 6511(b)(2). In other words, Mr. Goldman paid no taxes within the look-back period for which Mr. Goldman seeks a refund.

Thus, absent a specific exception to, or tolling of, I.R.C. § 6511(b)(2)(A)'s look-back period, Mr. Goldman's potential recovery is reduced "to zero dollars," and, therefore, his suit "fail[s] to state a claim upon which relief can be granted." *Murdock v. United States*, 103 Fed. Cl. 389, 396 (2012). One such possible exception is financial disability, a subject to which this Court turns next.

**B. I.R.C. § 6511(h)'s "Financial Disability" Exception Does Not Save Mr. Goldman's Claim**

As noted above, I.R.C. § 6511(h) provides for the suspension of all limitation "periods" in § 6511(a) and § 6511(b) "while a taxpayer is unable to manage financial affairs due to disability." I.R.C. § 6511(h). This provision is often referred to as the "financial disability" exception. *See, e.g.*, *Ruebsamen v. United States*, 2022 WL 2315722, at *1 (Fed. Cl. Apr. 15, 2022). For the reasons explained below, Mr. Goldman cannot rely upon I.R.C. § 6511(h) to avoid the look-back period.

To avoid the consequences of the look-back provision, I.R.C. § 6511(b)(2), Mr. Goldman invokes the "financial disability" exception of I.R.C. § 6511(h) before this Court — just as he previously did before IRS Appeals. Compl. at 5; Pl. Ex. at 46-47. Specifically, Mr. Goldman contends that he was "legitimately financially disabled during the period from November 2017 through February 2022." Compl. at 5. Thus, Mr. Goldman effectively argues that his look-back period was tolled from April 2018 through March 2022, and thus his refund claim seeks a sum well *within* the three-year look-back, I.R.C. § 6511(b)(2). *Id.* Relying on I.R.C. § 6511(h), Mr. Goldman argues that IRS Appeals improperly denied his 2017 refund claim. *Id.* The fatal problem for Mr. Goldman's financial disability claim, however, is that his accountant was *authorized* to file Mr. Goldman's 2017 personal income tax return; the accountant's failure to do so is not relevant to the period of financial disability.[10]

[10] Whether Mr. Goldman may have a claim against his accountant for breach of some contract or

While I.R.C. § 6511(h)(2)(A) sets forth general conditions for a taxpayer to be considered financially disabled, § 6511(h)(2)(B) provides that "[a]n individual shall not be *treated* as financially disabled during *any period* that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters." I.R.C. § 6511(h)(2)(A)-(B) (emphasis added). Simply put, the plain text of the financial disability provision contemplates that even though a taxpayer may be financially disabled in general, the taxpayer will "not be *treated*" as such, *so long as* there is another "person [] authorized to act on behalf of [that taxpayer] in financial matters." I.R.C. § 6511(h)(2)(B) (emphasis added). Thus, for any ***part*** of an otherwise bona fide period of financial disability during which a taxpayer has authorized another person to transact on the taxpayer's behalf, the taxpayer cannot take advantage of the tolling in I.R.C. § 6511(h).

Accordingly, Mr. Goldman may toll the three-year look-back period in I.R.C. § 6511(b)(2) via the financial disability exception in I.R.C. § 6511(h) for whatever period Mr. Goldman was both financially disabled and did not authorize a third-party to act on his behalf in financial matters.[11] As an initial matter, Mr. Goldman alleges he was financial disabled only from November 2017 until February 2022, Pl. Ex. at 53; on October 24, 2023, Mr. Goldman filed his 2017 personal income tax return, Compl. at 4. Thus, for approximately a year and nine months (*i.e.*, from February 2022 through October 24, 2023), there is no question that Mr. Goldman, by his own admission, was not financially disabled.

That leaves Mr. Goldman with only approximately a year and three months of the three-year look-back period during which he may potentially qualify as financially disabled. Mr. Goldman's 2017 personal income tax was "deemed paid" on April 15, 2018. *See* I.R.C. § 6513(b)(2). Therefore, *absent tolling*, the three-year look-back period of I.R.C.

---

fiduciary duty, this Court cannot say.

[11] Pursuant to I.R.C. § 6511(h)(2)(B), the critical question is whether a taxpayer authorized a third-party to file his or her administrative refund claim (which is oftentimes included with a taxpayer's tax return, as was the case here with Mr. Goldman's refund claim). Broad authority to act in all other financial matters of the taxpayer is not required. *See Plati v. United States*, 99 Fed. Cl. 634, 640 (2011) (concluding that because taxpayer granted her son authority to file her tax return (which included a refund claim due to a pervious overpayment), taxpayer did *not* qualify for the § 6511(h) financial disability exception given its explicit "carve out," I.R.C. § 6511(h)(2)(B)); *see also Pull v. I.R.S.*, 2015 WL 1439948, at *5 (E.D. Cal. Mar. 27, 2015) (concluding that retaining a certified public accountant to file a taxpayer's tax returns "qualif[ies] as a third person with authority to act on behalf of [a taxpayer plaintiff] in financial matters" for purposes of I.R.C. § 6511(h)(2)(B)).

§ 6511(b)(2) would begin to run on April 15, 2018. But Mr. Goldman would be entitled to I.R.C. § 6511(h) tolling — such that he could take advantage of whatever remains of the three-year look-back provision, *see* § I.R.C. 6511(b)(2) — ***if and only if*** Mr. Goldman's relationship with his accountant terminated less than approximately a year and three months after April 15, 2018. This is particularly relevant, because while Mr. Goldman alleges that his accountant had worked for Mr. Goldman during previous tax years, *and that at some point the two "parted ways" due to Mr. Goldman's financial issues*, his complaint omitted the exact date their professional relationship terminated. *See* Compl. at 3.[12]

Accordingly, this Court issued an order to show cause, to provide Mr. Goldman with an opportunity to clarify the record on this point. *See Goldman*, 2026 WL 183812, at *3. Specifically, this Court explained that because Mr. Goldman's complaint, "nowhere indicates the precise date of when he and his accountant terminated their professional relationship[,]" this Court "[was] unable to determine if Mr. Goldman qualifies for tolling pursuant to I.R.C. § 6511(h) such that he could take advantage of whatever little (or much) remains of the three-year look-back provision, I.R.C. § 6511(b)(2)." *Goldman*, 2026 WL 183812, at *3. This Court further explained that, given the uncertainty, "this Court [was] inclined to conclude that Mr. Goldman fails to state a claim upon which relief may be granted because his recovery of any overpaid tax at issue is completely precluded by the look-back provision, I.R.C. § 6511(b)(2)." *Id.* Accordingly, this Court ordered Mr. Goldman to show cause why this Court should not "dismiss [his] case for failure to state a claim pursuant to RCFC 12(b)(6) because [] Mr. Goldman, in his complaint, did not note the exact date he and his accountant terminated their professional relationship." *Id.* at *5. This Court further ordered Mr. Goldman's response to "indicate the *precise* date, if any, Mr. Goldman and his accounted terminated their professional relationship." *Id.*

While, in response, Mr. Goldman provided *some* indication of when Mr. Goldman and his accountant terminated their professional relationship, *see* Pl. Supp. Resp. at 3-4, Mr. Goldman also — albeit likely unintentionally — confirmed that he cannot take advantage of I.R.C. § 6511(h)'s tolling in any event. Mr. Goldman explained that, in addition to providing his accountant with e-file authorization to file Mr. Goldman's 2017 personal income tax return, Mr. Goldman also provided his accountant with authorization to late-file Mr. Goldman's 2018 tax returns **on April 25, 2022**. Pl. Supp. Resp. at 3. However, when Mr. Goldman's accountant refused to file the 2018 returns

[12] Mr. Goldman's submission to IRS Appeals does not mention either that Mr. Goldman and his accountant eventually parted ways, or that Mr. Goldman had a working relationship with his accountant in previous years. *See* Pl. Ex. at 55.

"subsequent to [that] date[,] . . . [Mr. Goldman's] accountant became [his] former accountant, and she did no further work for [Mr. Goldman]." *Id.* at 4. That is, by Mr. Goldman's own admission, he and his accountant only parted ways sometime ***after*** April 25, 2022. Because Mr. Goldman contends that his relationship with his accountant terminated *more than* approximately a year and three months after April 15, 2018 (indeed, more than four years after that date), Mr. Goldman cannot take advantage of I.R.C. § 6511(h)'s tolling. *See* I.R.C. § 6511(h)(2)(B).[13]

In sum, because Mr. Goldman cannot invoke I.R.C. § 6511(h)'s tolling provision, Mr. Goldman fails to state a claim upon which relief may be granted as his recovery of any overpaid tax at issue is completely precluded by the look-back provision, I.R.C. § 6511(b)(2). *See Schallmo*, 825 F. App'x at 828-29; *Murdock*, 103 Fed. Cl. at 396; *Martinez*, 2013 WL 3940958, at *4.[14] While this Court is sympathetic to Mr. Goldman's predicament, as the undersigned recently explained, "this Court 'lack[s] any discretion to suspend the

---

[13] The government's motion to dismiss failed to adequately identify this specific deficiency in Mr. Goldman's financial disability claim. In that regard, the government moved to dismiss Mr. Goldman's claim pursuant to RCFC 12(b)(6) because Mr. Goldman's accountant was authorized to file Mr. Goldman's 2017 personal income tax return *at some point*. Def. Mot. at 12-15. The government apparently reads I.R.C. § 6511(h) as meaning that Mr. Goldman cannot invoke financial disability if, during the period of such disability, someone else is authorized to transact financial business on his behalf *even for a moment*. This argument borders on frivolous and is inconsistent with the plain text of I.R.C. § 6511(h). As explained in this opinion, and in the order to show cause, Mr. Goldman's authorization of his accountant during a broad period of financial disability does not preclude Mr. Goldman from invoking I.R.C. § 6511(h), *per se*. Because this Court gave Mr. Goldman the opportunity to correct the record with respect to the precise duration of his accountant's authorization, *see Goldman*, 2026 WL 183812, at *3, *5, the Court's dismissal decision here is not a *sua sponte* dismissal. In any event, a *sua sponte* dismissal for failure to state a claim is permissible "when no additional proceedings would allow the plaintiff to prove additional facts entitling them to relief, especially when the facts asserted by the plaintiff do not, under the law, entitle him to a remedy." *Ruebsamen*, 2022 WL 2315722, at *4 (citing *Georgeff v. United States*, 67 Fed. Cl. 598, 601 (2005)). Because Mr. Goldman clearly cannot invoke I.R.C. § 6511(h)'s tolling, by his own pleadings and factual admissions, "the Court finds that no additional proceedings in this case would entitle [Mr. Goldman] to relief." *Ruebsamen*, 2022 WL 2315722, at *4.

[14] This Court's order to show cause further addressed a *second*, unrelated issue potentially created by Mr. Goldman's failing to indicate *to IRS Appeals* the precise date Mr. Goldman and his accountant terminated their professional relationship. *See Goldman*, 2026 WL 183812, at *3-*5. That second issue concerned "form and manner" requirements in submitting a financial disability claim to the IRS. *Id.* at *3 (discussing I.R.C. § 6511(h)(2)(A)). This Court will not address the latter issue in this opinion because this Court concludes that Mr. Goldman cannot qualify for I.R.C. § 6511(h)'s financial disability exception given Mr. Goldman's accountant's now-known date of termination.

[I.R.C. § 6511 limitation periods] for a reason other than financial disability' of the taxpayer." *Suvarna v. United States*, 2026 WL 1947908, at *5 (Fed. Cl. July 1, 2026) (quoting *Redondo v. United States* 542 F. App'x 908, 911 (Fed. Cir. 2013) (discussing *Brockamp*, 519 U.S. at 350-54)). "Moreover, '[s]ympathy by the court for plaintiff's situation is not a basis to supersede the limited waiver of sovereign immunity under § 6511(h).'" *Suvarna*, 2026 WL 1947908, at *5 (quoting *Meconi v. United States*, 2014 WL 2590925, at *6 (D. Del. June 6, 2014)).

## V. CONCLUSION

For the foregoing reasons, this Court hereby **DENIES** the government's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1) but **GRANTS** the government's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6). The Clerk of this Court directed to enter **JUDGMENT** for the government, dismissing this case.

**IT IS SO ORDERED.**

s/Matthew H. Solomson
Matthew H. Solomson
Chief Judge